*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* D. R. GEARIN, Minor.

UNPUBLISHED
October 19, 2023

No. 364522
Wayne Circuit Court
Family Division
LC No. 20-000590-NA

Before: MURRAY, P.J., and O'BRIEN and SWARTZLE, JJ.

PER CURIAM.

Respondent appeals by right the trial court order terminating her parental rights to her minor child, DRG, under MCL 712A.19b(3)(c)(*i*) (conditions that led to the adjudication continue to exist and no reasonable likelihood that they would be rectified within a reasonable time considering the child's age) and (j) (risk of harm if returned to parent). The trial court further found, pursuant to MCL 712A.19b(5), that termination of respondent's parental rights was in DRG's best interests. We affirm.

Regarding respondent's contention that the trial court clearly erred by finding clear and convincing evidence to support the statutory grounds for termination, MCL 712A.19b(3)(c)(*i*) and (j) provide:

> (3) The court may terminate a parent's parental rights to a child if the court finds, by clear and convincing evidence, 1 or more of the following:
>
> * * *
>
> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds either of the following:
>
> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.
>
> * * *

-1-

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). "This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination. The trial court's factual findings are clearly erroneous if the evidence supports them, but [this Court is] definitely and firmly convinced that it made a mistake." *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (citations omitted).

In *In re Gazella*, 264 Mich App 668, 676; 692 NW2d 708 (2005), superseded in part by statute on other grounds as stated in *In re Hansen*, 285 Mich App 158, 163; 774 NW2d 698 (2009), this Court held:

> [I]t is not enough to merely go through the motions; a parent must benefit from the services offered so that he or she can improve parenting skills to the point where the children would no longer be at risk in the parent's custody. In other words, it is necessary, but not sufficient, to physically comply with the terms of a parent/agency agreement or case service plan. For example, attending parenting classes, but learning nothing from them and, therefore, not changing one's harmful parenting behaviors, is of no benefit to the parent or child.

Under MCL 712A.19b(3)(j), the harm in question need not be physical; a risk of emotional harm is sufficient. *In re Hudson*, 294 Mich App 261, 268; 817 NW2d 115 (2011). "While the [Department of Health and Human Services (DHHS)] has a responsibility to expend reasonable efforts to provide services to secure reunification, there exists a commensurate responsibility on the part of respondents to participate in the services that are offered." *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012). A parent's failure to comply with any aspect of the treatment plan is evidence of an inability to provide proper care and custody for the child. *In re JK*, 468 Mich 202, 214; 661 NW2d 216 (2003); *In re White*, 303 Mich App at 710.

The following conditions led to the adjudication. DRG was born positive for THC. In June 2019, a neglect referral was received. Following the investigation of the referral, it was revealed that respondent was living in a motel with DRG and RJT, respondent's living-together partner who had regular contact with DRG, and was also a known long-term heroin addict with a criminal history. Illegal drugs and paraphernalia were found in the motel and known drug users were observed going in and out of the motel; clearly an unsafe living situation for DRG. Respondent had an extensive history of substance abuse, unstable mental health, unsuitable housing, lack of income, and improper supervision. There was no legal father. In January 2020, there was a physical altercation between respondent, RJT, and the maternal great-grandfather, who reported that he had found several syringes and other drug accoutrements in his basement where respondent and RJT were sleeping, and he believed that respondent had stolen his prescription for Vicodin. RJT refused to cooperate with Children's Protective Services (CPS) or participate in any services. CPS made it clear to respondent that her continued relationship with RJT was a roadblock

to reunification and that she needed to comply with services in order to continue to have custody of DRG. During the next year, CPS provided respondent with services addressing parenting skills, anger management skills, child safely skills, substance abuse counseling, and home visits, and safety plans, and referred her to several agencies. Random monthly drug screens were administered to respondent by CPS workers, and all tested positive for numerous illegal drugs, including cocaine, TCH, fentanyl, benzoylecgonine, diazepam, heroin, codeine, and morphine. Respondent was diagnosed with major depressive disorder and bipolar 1 disorder, and, during meetings with respondent, the workers observed unstable mental health behaviors. In addition, it was learned that respondent engaged in self-harm behaviors that included cutting and burning herself on her legs. She had been prescribed medications to address her mental health issues. Respondent was noncompliant with all suggested treatments and refused to take medications that had been prescribed for her. After a year of working with respondent and seeing no attempt to address any of her issues, in June 2020, DHHS filed its initial petition for removal of DRG. The trial court took jurisdiction over DRG and was placed with the maternal grandmother. Respondent pleaded no contest to the allegations in the petition and she signed and agreed to comply with a treatment plan.

Respondent was permitted supervised visitation as often as the maternal grandmother was willing to supervise. For more than the next two years, respondent was referred and re-referred for services to address her drug addiction and mental health issues. Respondent never complied with the random drugs screens and admitted to the trial court that she did not comply because she continued to use illegal substances. During this entire case, respondent was never drug free for any more than a short period of time and did not have sufficient income or suitable housing to care for DRG. The only services that respondent completed were parenting classes and the psychological and psychiatric evaluations. However, respondent never followed the recommendations. Although all testimony regarding respondent's parenting was that she was appropriate and there were no concerns, respondent's visits with DRG were inconsistent, and respondent disappeared from visitations and had no contact for months at a time during this case. As a result, the CPS workers concluded that respondent had not benefited from the parenting classes because she did not understand the importance of dependability and consistency in the life of a small child.

At the termination hearing, respondent testified that she had not visited DRG since July 2022, a period of five months; she then testified that she visited DRG "about a week ago." Respondent was informed several times that her relationship with RJT was a roadblock to reunification because of his history of drug addiction and his refusal to participate in any services, but she refused to sever that relationship. During this more than two-year period, respondent and RJT lived in a motel, in the basement of RJT's father, and in the car of RJT's father. Respondent had testified at several hearings about reunification actions she was going to take and told the trial court that she would sign releases so that there could be documentation of her participation. However, respondent never complied with the signing of the releases. After over two years of no compliance or progress, DHHS filed a petition for termination of respondent's parental rights.

At the time of the termination hearing, respondent and RJT had just moved into the home of an elderly couple where they received housing in exchange for care. That was a temporary situation and not a suitable home for a child. Respondent had visited DRG only five times in the last reporting period. Because respondent had refused to sign releases for information, there was

no documentation to support any of respondent's testimony about her sobriety, negative drug screens, or programs in which she claimed to be participating. Other than parenting classes, respondent never provided proof of attendance at any programs or services, she never provided proof of what medications she was taking, and she never had suitable housing or income. She had refused throughout to participate in the random drug screens, and admitted to continued use of illegal drugs.

At the termination hearing, respondent presented a document that showed a recent month or two of employment at McDonalds and a second document that showed she began working for Burr Group three days before the termination hearing. Respondent told the trial court that she intended to continue her relationship with RJT, and she would continue her employment, stay sober, save money for suitable housing, and participate in services. Respondent testified that she expected to be able to get suitable housing after two more paychecks. Given her history, the trial court found her testimony was not credible or a realistic expectation upon which the trial court could rely. In fact, in rendering its opinion, the court found that the document showing employment at Burr Group revealed that respondent had started her employment there only three days before the hearing. The trial court found that respondent's "last ditch efforts" were not sufficient.

Upon review of the record, we conclude that there was clear and convincing evidence to support the trial court's findings that the conditions that led to the adjudication continued to exist, and after over three years of refusal to participate in services to address her drug addiction and mental health concerns, respondent's last-minute employment and claims of participation without documentation were not sufficient to overcome the trial court's conclusion that there was no reasonable likelihood that the conditions that led to the adjudication would be rectified within a reasonable time considering DRG's age. Therefore, the trial court did not clearly err by finding clear and convincing evidence to support termination of respondent's parental rights under MCL 712A.19b(3)(c)(*i*). In addition, the same facts and conditions support clear and convincing evidence that, based on respondent's conduct of noncompliance, her continued drug addiction and relationship with RJT, and her failure to visit with DRG on a regular basis, that there was a reasonable likelihood that DRG would be harmed if she was returned to respondent's care. Thus, termination was also proper under MCL 712A.19b(3)(j).

Next, respondent contends that the trial court erred by finding that termination of respondent's parental rights would be in DRG's best interests.

MCL 712A.19b(5) provides:

> If the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "[W]hether termination of parental rights is in the best interests of the child must be proved by a preponderance of the evidence." *In re*

-4-

*Moss*, 301 Mich App 76, 90; 836 NW2d 182 (2013). The trial court's ruling regarding best interests is reviewed for clear error. *In re Schadler*, 315 Mich App 406, 408; 890 NW2d 676 (2016). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *Moss*, 301 Mich App at 80 (quotation marks and citation omitted).

The trial court must weigh the evidence available on the whole record in determining the child's best interests. *In re Trejo*, 462 Mich 341, 356; 612 NW2d 407 (2000), abrogated in part by statute as stated in *Moss*, 301 Mich App at 83. It may consider such factors as "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *Olive/Metts*, 297 Mich App at 41-42 (citations omitted). Other considerations include the length of time the child has been in foster care or placed with relatives, the likelihood that "the child could be returned to her parents' home within the foreseeable future, if at all," compliance with the treatment plan, whether the parent can provide a permanent, safe, and stable home, *In re Frey*, 297 Mich App at 248-249, and the child's safety and well-being, *In re VanDalen*, 293 Mich App 120, 142; 809 NW2d 412 (2011). In addition, the court may consider a parent's history of domestic violence, the parent's visitation history with the child, the child's well-being while in care, and the possibility of adoption. *In re Pederson*, 331 Mich App 445, 476; 951 NW2d 704 (2020). "The court shall state on the record or in writing its findings of fact and conclusions of law with respect to whether or not parental rights should be terminated." MCL 712A.19b(1); *In re Trejo*, 462 Mich at 356.

At this stage in the proceedings, the best interests of the child in having "a normal family home is superior to any interest the parent has." *Moss*, 301 Mich App at 89. Regarding placement with relatives, in *Olive/Metts*, 297 Mich App at 43, this Court held:

> However, because "a child's placement with relatives weighs against termination under MCL 712A.19a(6)(a)," the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests. Although the trial court may terminate parental rights in lieu of placement with relatives if it finds that termination is in the child's best interests, the fact that the children are in the care of a relative at the time of the termination hearing is an explicit factor to consider in determining whether termination was in the children's best interests. A trial court's failure to explicitly address whether termination is appropriate in light of the children's placement with relatives renders the factual record inadequate to make a best-interest determination and requires reversal. [Quotation marks and citations omitted.]

The referee noted that the document that respondent entered into evidence to prove her employment at Burr Group showed that respondent had started her employment with Burr Group only three days before the termination hearing. Therefore, the benefits respondent claimed, that her salary would be raised to $17 an hour after she had two weeks of perfect attendance, and that Burr Group would provide a 401k and health insurance, could not be assured given respondent's history of two and a half years of unemployment, and a month or two at McDonald's. In addition,

respondent was not compliant with her treatment plan and, despite completing parenting classes, her visitation history with DRG demonstrated that she did not benefit from the service.

In addition, the trial court acknowledged, and as it was required to do, "explicitly address[ed]" the fact that DRG was living with a relative. The trial court determined that termination was in DRG's best interests, opining that respondent would not be able to make the necessary changes within a reasonable amount of time, and stating: "[T]hat is why despite the child being with a relative that termination is in the best interest of [the] child and that [respondent] should not be afforded the opportunity to gain custody of this child in the future." DRG needed permanency, stability, and a normal family home. Given respondent's conduct during the two and a half years of this case, it was clear that respondent would not be able to provide a permanent, safe, and stable home within a reasonable time, if ever. At the time of the termination hearing, the conditions that brought this case within the jurisdiction of the court continued to exist. The trial court did not clearly err by finding by a preponderance of the evidence that termination of respondent's parental rights was in DRG's best interests.

Finally, we reject respondent's argument that a guardianship would have been a more appropriate permanency goal than adoption. In its decision, the trial court discussed the issue of guardianship, stating:

> I believe that despite the child being with a relative, I think the child being with a relative in this case has been a crutch to reunification. And it's not fair to this child. This child deserves permanency and stability and the failure of mother to put the child's needs for permanence and stability over her substance abuse is not fair. And any other permanency plan, I believe such as guardianship is hope that the parents will make necessary changes.

> This Court is not of the opinion that those changes will be made in a reasonable amount of time, as I indicate three to six months, I do not believe so and I believe that is why despite the child being with a relative that termination is in the best-interest of the child and that mother should not be afforded the opportunity to gain custody of this child in the future.

"[I]f the court determines that it is in the child's best interests, the court may appoint a guardian for the child." MCL 712A.19c(2). In deciding whether the appointment of a guardian is in the child's best interests, "the court may consider the best-interest factors . . . , or any other factors that may be relevant under the circumstances of a particular case." *In re COH, ERH, JRG, & KBH¸* 495 Mich 184, 208; 848 NW2d 107 (2014). In *In re TK*, 306 Mich App 698, 707; 859 NW2d 208 (2014), this Court found:

> [T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interest. MCL 712A.19a(7). Then, the court must find that it is in the child's best interests to appoint a guardian. MCL 712A.19a(7)(c) and MCR 3.979(A).

Respondent's arguments that she had a "good visitation history, excellent parenting skills and compliance with the treatment plan," and that "[n]obody has observed mother to be under influence of controlled substances during parenting time or on any other occasion" greatly distorts the facts. Respondent did not have a good visitation history. At the termination hearing, the worker reported that respondent had been offered 224 visitations with DRG; she attended 93 visits, and missed 131 visits. Since the termination petition had been filed, respondent had visited only five times. Although respondent was appropriate during visitations, the issue was that she did not visit enough or consistently. In addition, the evidence was clear that respondent did not comply with any of the major requirements in her treatment plan; she continued to use illegal substances during the entire case, continued to live and plan with RJT, and never had a suitable home or sufficient income to support a child.

The trial court explained that a guardianship for a four-year-old should only be considered if there was "hope that the parents will make necessary changes." And, given respondent's lack of progress toward reunification for over two years, the court did not believe that respondent would make the necessary changes in a "reasonable amount of time." Therefore, the court concluded that termination of respondent's parental rights, rather than a guardianship, would be in DRG's best interests. There was clear and convincing evidence to support that decision. There was no evidence whatsoever that respondent would comply with a treatment plan or be in a position to regain custody of DRG within a reasonable time considering DRG's age. The trial court did not clearly err by finding that termination of respondent's parental rights would provide a better future for DRG than a guardianship.

Affirmed.

/s/ Christopher M. Murray
/s/ Colleen A. O'Brien
/s/ Brock A. Swartzle